# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald Stockton, : 
            Appellant : 
             : 
            v. : No. 2350 C.D. 2015
             : Submitted: April 29, 2016
Commonwealth of Pennsylvania : 
Department of Corrections; : 
Marirosa Lamas; B. Thompson; : 
R. Marsh; T. Miller; L. Eatton; : 
and R. Vance : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**          **FILED: August 23, 2016**

This lawsuit arises out of a fight between inmates at a state correctional institution on June 4, 2010. Currently at issue is Ronald Stockton's civil rights claim that prison authorities failed to protect him from the other inmate.

The case returns to us after remand. See Stockton v. Commonwealth, Dep't. of Corr., (Pa. Cmwlth., No. 765 C.D. 2012, filed November 16, 2012), 2012 WL 8679780 (unreported) (Stockton I). In Stockton I, we reversed, in part, an order of the Court of Common Pleas of Centre County (trial court) that sustained the preliminary objections filed by the Department of Corrections on behalf of the

named appellees[1] (collectively, DOC) to Stockton's complaint. We returned this matter to the trial court to address, among other things, Stockton's "failure to protect" claim. On remand, the trial court determined Stockton failed to satisfy a statutory prerequisite to a civil rights suit involving prison conditions, exhaustion of administrative remedies. The trial court therefore entered summary judgment in favor of DOC.

In his current appeal, Stockton, representing himself, asks whether the trial court erred in granting summary judgment in favor of DOC. He argues: (1) DOC waived its affirmative defense of failure to exhaust administrative remedies as to Stockton's "failure to protect" claim; (2) he exhausted his administrative remedies, or the exhaustion of remedies requirement does not apply to him; (3) the trial court abused its discretion in refusing to grant him further leave to amend; and, (4) the trial court had a duty to set up a process to ensure Stockton received all discoverable materials. Upon review, we affirm.

## I. Background

This matter has a long and convoluted history. Stockton is an inmate currently incarcerated at SCI-Smithfield. Stockton filed suit in the trial court seeking monetary damages for alleged violations of his constitutional rights and

---

[1] Appellees, all of whom hold or held positions at SCI-Rockview, are: Marirosa Lamas, Superintendent; B. Thompson, Former Superintendent; R. Marsh, Deputy Superintendent; T. Miller, CCPM; L. Eatton, Security Captain; and, R. Vance, Security Lieutenant.

tortious conduct while incarcerated at SCI-Rockview. Specifically, he filed a series of amended complaints. Certified Record (C.R.), Item Nos. 3, 6, 37, 129.[2]

Stockton averred that he was previously found guilty of assaulting another inmate. See C.R., Item No. 3 at ¶10. The victim of Stockton's earlier assault required over 50 stiches on his face. Id. As a result, Stockton received 13½ months confinement in the restricted housing unit (RHU).

While Stockton remained in the RHU, the brother of his victim entered the institution. Stockton avers that at the point where he was to leave RHU and re-enter the general population, prison officials warned the victim's brother that Stockton was re-entering the general prison population and that the brother might also be a target of violence. Stockton avers that, by contrast, DOC took no steps to protect him from possible retaliation, such as warning him of the victim's brother's presence once he returned to general population.

Shortly after he re-entered the general population, Stockton was "assaulted after being attacked" presumably by his prior victim's brother. C.R., Item No. 26 at ¶31. Stockton blames DOC for not protecting him against this June 4, 2010 assault, and this is the basis for his "failure to protect" claim.[3]

---

[2] Unless otherwise noted, all citations are to the document numbers as listed in the index to the Certified Record.

[3] Various internal prison proceedings followed the June 4, 2010 fight. Stockton was charged with misconduct, a charge he appealed but eventually lost. In addition, Stockton claimed he filed a grievance over his "failure to protect" claim. Although Stockton filed many
**(Footnote continued on next page…)**

3

DOC filed preliminary objections. C.R., Item No. 17. In initially resolving DOC's preliminary objections, the trial court concluded that Stockton did not allege exhaustion of administrative remedies in any of his complaints. C.R., Item No. 25. As a result, the trial court sustained the preliminary objections, and it dismissed Stockton's suit with prejudice. C.R., Item No. 25 at ¶5.

Stockton appealed to this Court. In Stockton I, we determined: (1) Stockton's common law tort claims were barred by sovereign immunity; (2) the trial court erred in sustaining DOC's preliminary objection asserting failure to exhaust administrative remedies (a statutory prerequisite to suit) and, therefore, a remand was necessary; (3) Stockton did not set forth the required elements for an equal protection claim; (4) the trial court did not properly address DOC's preliminary objections to Stockton's "failure to protect" claim under 42 U.S.C. §1983, and, therefore, a remand was necessary for the trial court to do so; and, (5) a remand was necessary to allow the trial court to consider whether any lapses in pleading the constitutional claims could be cured by amendment. See Stockton I. Thus, we affirmed the trial court's order to the extent it dismissed common law tort claims and sustained DOC's demurrer to Stockton's equal protection claim. However, we vacated the trial court's order to the extent it sustained DOC's preliminary objections pertaining to Stockton's "failure to protect" claim. We also stated the trial court may consider whether any perceived shortcomings in pleading

---

**(continued…)**

grievances, DOC disputed that any of them pertained to a "failure to protect" Stockton around June 2010.

4

the equal protection and "failure to protect" claims are properly cured by amendment.

On remand, Stockton filed an amended complaint, and DOC filed preliminary objections and a motion for summary judgment. C.R., Item Nos. 37-38, 105. The trial court granted DOC's motion for summary judgment. C.R., Item No. 118. Thereafter, Stockton filed a "supplemental complaint." C.R., Item No. 129. DOC filed its second motion for summary judgment on the ground that Stockton did not exhaust his administrative remedies as to the remaining "failure to protect" claim. C.R., Item No. 131.

After a hearing,[4] the trial court granted DOC's second motion for summary judgment and dismissed Stockton's suit with prejudice. C.R., Item Nos. 161, 163, 168. In its opinion and order, the trial court determined Stockton did not exhaust his administrative remedies and found his version of the events at issue "incredible based on the inconsistencies, dates, and the testimony … discussed [in the opinion]." C.R., Item No. 163 at 7. Thus, the trial court determined Stockton did not assert his "failure to protect" claim to DOC before he filed suit. Stockton again appealed to this Court.

---

[4] Regarding a hearing on the motion for summary judgment and the trial court's factual determinations, exhaustion of administrative remedies is a statutory prerequisite to suit under the Prisoner Litigation Reform Act, 42 U.S.C. §1997e(a). Thus, resolution of this threshold issue is a matter to be decided by a judge even if factual determinations must be made, similar to a threshold decision on jurisdiction, venue, or on the ability of the court to afford relief. Small v. Camden County, 728 F.3d 265 (3rd Cir. 2013). Stockton does not assign error to this procedure.

**II. Issues**

On appeal,[5] Stockton contends: (1) DOC waived its affirmative defense of failure to exhaust administrative remedies as to Stockton's "failure to protect" claim; (2) he exhausted his administrative remedies, or he did not need to exhaust his administrative remedies; (3) the trial court abused its discretion in refusing to grant Stockton further leave to amend; and, (4) the trial court had a duty to set up a process to ensure Stockton received all discoverable materials.

**III. Discussion**
**A. Waiver**
**1. Contentions**

Stockton first argues DOC waived its affirmative defense of failure to exhaust administrative remedies. He asserts waiver occurred when DOC failed to properly raise and preserve this issue in its preliminary objections, answer to amended complaint or first summary judgment motion.

Stockton contends that case law establishes that the defense of exhaustion of administrative remedies is waived if it is not properly preserved. See Smith v. Mensinger, 293 F.3d 641 (3rd Cir. 2002) (exhaustion provision of the Prisoner Litigation Reform Act, 42 U.S.C. §1997e(a) (PLRA) requires inmates to exhaust claims before filing suit under 42 U.S.C. §1983; exhaustion is an affirmative defense that is waived if not properly preserved by a defendant).

---

[5] In reviewing the grant of a motion for summary judgment, our scope of review is plenary and our standard of review requires that we affirm the trial court's order only where the record, when viewed in the light most favorable to the non-moving party, clearly shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. P.J.S. v. Pa. State Ethics Comm'n, 894 A.2d 174 (Pa. 1999); Weckel v. Carbondale Hous. Auth., 20 A.3d 1245 (Pa. Cmwlth. 2011); Kuniskas v. Commonwealth, 977 A.2d 602 (Pa. Cmwlth. 2009).

6

Stockton argues DOC only "objected" that Stockton did not assert exhaustion in his complaint. Stockton argues alleging exhaustion in a complaint is not a requirement. Jones v. Bock, 549 U.S. 199 (2007) (failure to exhaust is an affirmative defense under PLRA; inmates are not required to specially plead or demonstrate exhaustion in their complaints). Thus, Stockton argues DOC waived the exhaustion defense by failing to advance it in its preliminary objections, answer to amended complaint or first summary judgment motion.

DOC counters the trial court did not err in finding exhaustion could be raised at the summary judgment stage because Stockton had notice of the defense sufficient to avoid prejudice. DOC acknowledges it did not raise its failure to exhaust defense as early as possible. However, it asserts a court may consider an untimely assertion of an affirmative defense where the delay was not for a tactical or other improper reason and it did not prejudice the plaintiff's case. Appellees' Br. at 9-10 (citing Williams v. Nish, No. 1:11–CV–0396 (M.D. Pa., filed January 7, 2015) (Rambo, J.), 2015 WL 106387). In other words, a post-answer exhaustion defense can be raised when the opposing party has notice of the defense sufficient to avoid prejudice. Baker v. Beard, No. 4:CV-05-281 (M.D. Pa., filed June 21, 2006) (Jones, J.), 2006 WL 1725557.

DOC asserts nothing in the record suggests its delay in asserting its failure to exhaust defense caused any "appreciable prejudice." Appellees' Br. at 10 (citing C.R., Item No. 163 at 3). Applying the holding in Nish, DOC argues the trial court here held a full hearing on the exhaustion issue and found there was no "indicia of improper actions on the part of [DOC] in failing to raise the failure to exhaust defense earlier." C.R., Item No. 163 at 4. Thus, the trial court concluded DOC did not waive this defense. Id.

7

Further, in determining whether a party can raise a post-answer exhaustion defense, courts look to whether the opposing party had notice of the defense sufficient to avoid prejudice. <u>Conrad v. Wachovia Grp. Long Term Disability Plan</u>, Civil No. 08–5416 (D.N.J. filed September 21, 2010), 2010 WL 3810198 (citing <u>Eddy v. V.I. Water & Power Auth.</u>, 256 F.3d 204 (3d Cir. 2001)); <u>see</u> <u>also</u> <u>Engers v. AT&T</u>, 428 F.Supp.2d 213 (D.N.J. 2006) (exhaustion defense raised for first time at summary judgment stage is not waived where plaintiff suffered no prejudice and public policy was best served by applying the requirement).

### 2. Discussion

We agree that DOC could have, and should have, raised its failure to exhaust remedies defense at an earlier stage in these proceedings. However, the record lacks evidence to suggest DOC's delay was for tactical or improper reasons. <u>Conrad</u>. Further, Stockton does not argue DOC acted in bad faith as to the timing of this defense. <u>Nish</u>.

Importantly, Stockton does not identify any specific prejudice he suffered based on DOC's delay in raising the failure to exhaust defense earlier. <u>Conrad</u>.

In addition, our independent review fails to reveal any prejudice to Stockton, for two reasons. First, Stockton was clearly aware of the exhaustion requirement, regardless of DOC's failure to raise the defense in its pleadings. This is evident because Stockton specifically addressed the issue in six of his court filings.

Second, Stockton is not prejudiced in terms of his ability to contest the affirmative defense. This is because he had multiple opportunities to do so, including at the remand hearing before the trial court.

Under similar circumstances of lack of prejudice, courts routinely consider the failure to exhaust defense when raised for the first time on summary judgment. See, e.g., Brown v. Deparlos, No. 12–1217 (3d Cir., filed July 2, 2012) (per curiam), 2012 WL 2512014 (affirming district court's finding of no prejudice where failure to exhaust not argued until motion for summary judgment); Baker v. Beard, (M.D. Pa., filed June 21, 2006), 2006 WL 1725557 at *3 (granting summary judgment in favor of defendants on failure to exhaust, where defense raised for the first time on summary judgment, stating "[d]efendants have raised their exhaustion defense at an appropriate point in time since they do so prior to adjudication.").

We conclude DOC could have, and should have, raised the defense of failure to exhaust at an earlier stage. However, Stockton suffered no prejudice. Further, DOC's delay was not for tactical or improper reasons. Also, Stockton does not argue DOC acted in bad faith as to the timing of this defense. For all these reasons we conclude DOC did not waive the failure to exhaust administrative remedies defense.

## B. Exhaustion of Administrative Remedies

### 1. Contentions

Stockton next argues he made every attempt at properly exhausting his available administrative remedies. First, he challenges the trial court's factual

9

determinations that he did not file a grievance for his June 2010 "failure to protect" claim.

Second, he asserts the somewhat inconsistent argument that the grievance procedures were not available to him because the assault on June 4, 2010 was treated as a misconduct charge against him, and DOC policy does not permit an inmate to grieve matters handled as inmate misconduct. He therefore argues the grievance procedure was not an adequate administrative remedy for him. Relatedly, Stockton asserts that the exhaustion requirement only relates to federal actions, not actions in state courts.

Third, Stockton argues that all the facts of the assault were revealed during the misconduct proceedings, so that exhausting the misconduct remedy served the same function as exhausting grievance claims. In other words, the misconduct proceedings alerted DOC to the underlying elements of his "failure to protect" claim. Stockton thus asserts this other procedure satisfied the exhaustion of remedies requirement.

DOC responds that the trial court properly determined that Stockton did not exhaust his administrative remedies. Further, Stockton's misconduct appeal did not constitute an exhaustion of remedies. DOC highlights a factually identical case, in which the Third Circuit explained that the purpose of the exhaustion requirement is to ensure prison personnel have a fair opportunity to correct any errors before litigation in the court system is commenced. Howard v. Chatcavage, 570 Fed.Appx. 117 (3rd Cir. 2014) (unreported), cert. denied, ___ U.S. ___, 135 S. Ct. 968 (2015).

10

In <u>Chatcavage</u>, inmate Howard was involved in a fight with another inmate. Howard challenged a misconduct charge against him, which was later dismissed. However, Howard did not file a grievance regarding a separate failure to protect claim. Instead, Howard filed an action in court alleging a failure to protect. In response, DOC filed a summary judgment motion, arguing Howard did not exhaust his administrative remedies on his failure to protect claim before filing suit. The district court granted DOC's summary judgment motion and dismissed the case for failure to exhaust administrative remedies. In upholding the dismissal, the Third Circuit Court stated, "there is nothing in the record to indicate that Howard's appeal of the misconduct for fighting alerted prison officials to this affirmative [failure to protect] claim against them, much less afforded [DOC] the opportunity to evaluate or remedy that claim before the initiation of this case." <u>Id</u>. at 119.

## 2. Discussion

### a. Generally

In an effort to curb the number of prisoner filings, Congress enacted the PLRA, which, as relevant here, mandates that prisoners exhaust internal prison grievance procedures before filing suit. 42 U.S.C. §1997e(a); <u>Small v. Camden County</u>, 728 F.3d 265 (3rd Cir. 2013). The exhaustion provision of the PLRA reads:

> No action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies available are exhausted.

42 U.S.C. §1997e(a). Because Stockton's current lawsuit raises a claim under Federal law, 42 U.S.C. §1983, this exhaustion requirement applies to him.

11

Furthermore, Pennsylvania also has a prisoner litigation statute containing functionally identical requirements for claims in Pennsylvania courts arising under Federal and state laws. 42 Pa. C.S. §6603(a), (b); see Kittrel v. Watson, 88 A.3d 1091 (Pa. Cmwlth. 2014). These provisions also apply to Stockton's current lawsuit.

Under the PLRA, when federal claims are asserted, exhaustion is mandatory. See 42 U.S.C. §1997e. Exhaustion must also be "proper." Woodford v. Ngo, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Hence, an inmate must "us[e] all steps that the agency holds out." Id. at 90.

Exhaustion is mandatory, even if the administrative process cannot provide the prisoner with the relief he seeks. See Nyhuis v. Reno, 204 F.3d 65 (3rd Cir. 2000); see also Salter v. Lamas, (Pa. Cmwlth., No. 369 C.D. 2013, filed October 4, 2013), 2013 WL 5526322.

The purpose of the exhaustion requirement is to ensure that prison officials have a fair opportunity to correct their own errors before the initiation of a lawsuit. See Woodford; Chatcavage.

**b. Findings of Failure to Exhaust**

12

We reject Stockton's arguments. It is clear that the trial court had sufficient evidence to find that Stockton did not exhaust his administrative remedies. Stockton's position during the hearing was that he filed grievances which pertained to his "failure to protect" claim. After carefully reviewing the testimony and documents, the trial court found otherwise. In relevant part, the trial court first rejected Stockton's assertion that Grievance 342470, Stockton's Exhibit 1 at the hearing, pertained to the June 2010 assault incident. This grievance was first dated November 2010, and it appeared to relate to a different matter, the failure of a corrections officer to respond to one of Stockton's numerous requests.

Next, the trial court accepted as credible DOC's testimonial and documentary evidence from the coordinator of inmate grievances. He testified that another document Stockton identified as a June 2010 grievance appeared not authentic, because it lacked the coordinator's stamp, markings and signature. He also testified that DOC's computerized grievance records show several filings by Stockton during May and June 2010, but they were all for different matters. The numbers for the grievances ranged from 317490, filed May 10, 2010, to 325309, filed June 20, 2010. None of the grievances related to a "failure to protect" claim supposedly filed on around June 4, 2010.

Also, in response to Stockton's initial assertion that he handed his written grievance to a specific corrections officer on June 4 or 5, 2010, DOC showed that the corrections officer did not work during that time. Stockton later changed his timing claims, a change in position that the trial court noted.

13

The trial court also referenced several other grievances attached to filings by Stockton. All the grievance numbers related to periods well after the June 2010 time frame, and they appeared to be related to other matters.

Ultimately, the trial court found that Stockton did not exhaust his administrative remedies by filing a grievance. The trial court specifically rejected Stockton's version of events and accepted the evidence supplied by the coordinator of inmate grievances.

Our review of the hearing testimony and exhibits reveals substantial evidence supporting the trial court's findings. Thus, we decline Stockton's repeated invitations to revisit the findings.

### c. Claimed Unavailability/Inapplicability of Grievance Remedy

Further, we reviewed the transcripts of the pre-trial conference of May 29, 2015 and the hearing of July 17, 2015; however, we are unable to find where Stockton directed the trial court's attention to his current additional factual arguments: that the grievance procedure was unavailable to him and that DOC was alerted to the underlying facts of his "failure to protect" claim by virtue of the misconduct proceedings. Accordingly, these factual arguments appear to have been waived for failure to submit them to the very patient fact-finder before the close of the record.

Not surprisingly, the record lacks any support for Stockton's claim that the grievance remedy was unavailable to him. To the contrary, the record only supports a determination that Stockton was well aware of the grievance procedures, and he used them frequently.

14

Moreover, there is no evidence that Stockton submitted a grievance on his "failure to protect" claim, and that it was rejected for the policy reason Stockton now asserts. Also with regards to Stockton's belated policy argument, exhaustion of administrative remedies is mandatory, even if the administrative process cannot provide the prisoner with the relief he seeks. See Nyhuis; Chatcavage; see also Salter. Therefore, for factual and legal reasons, we reject Stockton's argument that the grievance remedy was unavailable to him.[6]

Further we reject as frivolous Stockton's assertion that the exhaustion of administrative remedies requirement does not apply to his lawsuit. See 42 U.S.C §1997e(a); 42 Pa. C.S. §6603(a), (b); Kittrell.

### d. Misconduct Appeals as Satisfying Exhaustion Requirement

We also reject Stockton's assertion that all the underlying facts for his claim were revealed during the misconduct proceedings. The hearing record fails to support this assertion because Stockton did not offer any evidence supporting this position. Thus, there is no basis in the hearing record to evaluate what facts were revealed during the misconduct proceedings. Additionally, there is no information in the hearing record to establish that prison personnel were put on notice of Stockton's "failure to protect" claim and afforded an opportunity to correct any errors prior to litigation. See Chatcavage.

---

[6] Mindful that the trial court rejected Stockton's testimony, there is no credible evidence that Stockton was told to delay filing a grievance or was impeded in any way. Compare Brown v. Croak, 312 F.3d 109 (3rd Cir. 2002); Camp v. Brennan, 219 F.3d 279 (3rd Cir. 2000).

15

Here, Stockton's misconduct appeal did not constitute an exhaustion of administrative remedies for a "failure to protect" claim. This conclusion is the same as that reached by the Third Circuit in Chatcavage, a decision properly relied on by the trial court here. Stockton did not give DOC the opportunity to correct any errors before he commenced suit.

In short, exhaustion of administrative remedies is a prerequisite to filing a complaint in this context, and Stockton failed to exhaust his administrative remedies here.

## C. Further Leave To Amend

Stockton next argues the trial court abused its discretion in not granting him *further* leave to amend his complaint to show he complied with the exhaustion requirement. Stockton asserts he "[e]xhausted the factual basis of [the] failure to protect claim … [but that] the exhaustion requirement is only a means to alert officials of an issue [in order to] give [inmates] a chance to correct." Appellant's Br. at 9.

DOC responds that Stockton did not set forth this assertion in his statement of errors complained of on appeal; therefore, it is waived. See Pa. R.A.P. 1925(b)(3)(iv). However, DOC asserts, even if Stockton did not waive this issue, he had a further opportunity to amend his complaint after this Court's remand in Stockton I, but he did not do so. DOC further asserts, even if Stockton did amend his complaint on remand, such amendment would be futile as Stockton could not show he complied with the exhaustion requirement.

16

Here, after Stockton's appeal from the grant of summary judgment, the trial court ordered him to file a concise statement of errors pursuant to Pa. R.A.P. 1925(b). In its order, the trial court explicitly stated: "Stockton, is hereby notified that any issue not properly included in the timely filed statement shall be deemed waived by the appellate court." C.R., Item No. 166. Stockton timely filed his 1925(b) statement. C.R., Item No. 167. Thereafter, the trial court issued its opinion. C.R., Item No. 168. In that opinion, the trial court found its "Opinion and Order entered on November 18, 2015, addressed the issues raised on appeal and provided the reasoning of [the trial court] in granting [DOC's] Second Motion for Summary Judgment in this matter." C.R., Item No. 168.

In his statement of errors complained of on appeal, Stockton did not include the claim that the trial court abused its discretion in not granting him leave to again amend his complaint in order to show he complied with the exhaustion requirement. Therefore, this issue is waived. See Commonwealth v. Castillo, 888 A.2d 775 (Pa. 2005) (citing Commonwealth v. Lord, 719 A.2d 306 (Pa. 1998)) ("[a]ny issues not raised in a Pa. R.A.P. 1925(b) statement will be deemed waived").

Further, even if properly preserved, any grant to further amend would be fruitless, given the trial court's findings that Stockton did not prove he complied with the exhaustion requirement.[7] See C.R., Item No. 163 at 4-6, n. 11. Therefore, we discern no reversible error.

---

[7] Leave to amend a complaint is within the discretion of the trial judge. Balletta v. Spadoni, 47 A.3d 183 (Pa. Cmwlth. 2012). Leave to amend a complaint will be withheld where the initial complaint reveals the *prima facie* elements cannot be established and where the defects **(Footnote continued on next page…)**

### D. Duty to Ensure Receipt of Discoverable Materials

Finally, Stockton argues the trial court had a duty to set up a process to ensure he received all discoverable materials necessary for his case. Stockton asserts DOC was required to turn over all information he requested that was relevant to "facts of claim." Appellant's Br. at 6. Stockton asserts DOC did not assert any of the discoverable material was protected by the attorney-client privilege, and thus those discoverable materials should be released to him for his case.

To that end, Stockton asserts the trial court "should have conducted an [*in camera*] inspection for discovery material that DOC claimed to provide security concerns." Id. at 10. Stockton further argues DOC "could have provided" the requested materials in redacted form. Id; see also Williams v. Klem, Civ. No. 3:07-1044 (M.D. Pa., filed March 3, 2011), 2011 WL 830537.

DOC counters that a process exists to ensure a defendant receives discoverable material. See Pa. R.C.P. Nos. 4000-4020. DOC asserts Stockton availed himself of that discovery process and served discovery motions on DOC. See C.R., Item Nos. 40, 46, 62, 74, 78, 110-111, 162; see also C.R., Item No. 52. DOC argues that the fact that Stockton did not like the responses DOC provided does not mean the process was flawed. DOC further maintains that Stockton filed

---

**(continued…)**

are so substantial that amendment is unlikely to cure them. Feldman v. Lafayette Green Condo. Assn., 806 A.2d 497 (Pa. Cmwlth. 2002).

18

several motions to compel, and those motions were denied. Id. DOC contends these denials do not mean that discovery in this case was devoid of process.

Pa. R.C.P. Nos. 4000-4020 provide a clear path to discovery, including but not limited to Pa. R.C.P. No. 4009.1, pertaining to the production of documents and things, Pa. R.C.P. No. 4009.21, pertaining to subpoenas for production of documents, and Pa. R.C.P. No. 4009.27 pertaining to certificates of compliance that all documents and things required to be produced have, in fact, been produced.

There can be no argument that Stockton was aware of the discovery process, and that on numerous occasions he availed himself of that process. We conclude a discovery process was in place.

In short, we concur with DOC's argument. Merely because Stockton did not like the responses from DOC does not mean that the process is non-existent or flawed.

Based on the foregoing, we affirm.

_____
ROBERT SIMPSON, Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald Stockton,               :
                     Appellant :
                               :
         v.                    :     No. 2350 C.D. 2015
                               :
Commonwealth of Pennsylvania   :
Department of Corrections;     :
Marirosa Lamas; B. Thompson;   :
R. Marsh; T. Miller; L. Eatton; :
and R. Vance                   :

## **O R D E R**

**AND NOW**, this 23rd day of August, 2016, the order of the Court of Common Pleas of Centre County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge