**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2378
_____

ROBERT L. SMALL,
                                        Appellant
v.

CAMDEN COUNTY; CAMDEN COUNTY
CORRECTIONAL FACILITY; DAVID OWENS; ERIC
TAYLOR; DAVID CROSSAN; OFF. NIEVES; JOHN
VERNON; JOSEPH WHITTICK; SGT. WORLDS; SERGIO
MONROE; JOSEPH WHITTICK; CHARLES WALKER;
MELENDEZ; CROSS; COOPER; WEBSTER; LIPKA;
CATHY HENDERSON; DEFORGE; HELLENDER;
PETTIS; HARRIS; PETER FARLOW; JONES; JOSEPHINE
CURLS; STEVE SCHOFIELD; ERIC PATRACCI; JAMES;
TISBY; DANIELS; ACCETTI; SIMONS; HICKS;
HOLLIMON; WESLEY; RODRIGUEZ;ALKINS; ELLIS;
FRANCHECHINI; KIMBERLEE ADAMS; JOHN DOES 1-
9; SKILLED NURSING, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 06-cv-01363)
District Judge:  Honorable Renee M. Bumb
_____

Argued:  July 10, 2013
_____

Before: GREENAWAY, JR., SLOVITER and BARRY,
*Circuit Judges*

(Opinion Filed: August 26, 2013)
_____

Jennings F. Durand, Esq.
Carolyn M. Hazard, Esq.
Dechert LLP
Cira Centre
2929 Arch St.
Philadelphia, PA 19104
        -AND-
Lauren M. Bennett*  (Argued)
University of Pennsylvania Law School
3400 Chestnut St.
Philadelphia, PA 19104
*Eligible Law Student under 3d Cir. L.A.R. 46.3

*Counsel for Appellant*

Anne Walters, Esq. (Argued)
Cheryl L. Cooper, Esq.
Howard L. Goldberg, Esq.
Office of County Counsel
Courthouse—14th Floor
520 Market St.
Camden, NJ 08102

*Counsel for Appellee Camden County*

Thomas J. Decker, Esq. (Argued)
Decker & Magaw
507 Westfield Ave.
Westfield, NJ 07090

*Counsel for Appellees Josephine Curls, et al*

Frank Orbach, Esq.
Law Offices of Brian Granstrand
200 Schulz Drive
4th Floor, Suite 405
Red Bank, NJ 07701

*Counsel for Appellee Cathy Henderson*

_____

OPINION OF THE COURT
_____

BARRY, *Circuit Judge*

Robert L. Small, an inmate at the Camden County Correctional Facility ("CCCF"), appeals the dismissal of his civil rights action against Camden County, CCCF, approximately thirty individual medical personnel and prison officers, and nine John Does (collectively, "Defendants"), for his failure to exhaust administrative remedies, as he was required to do by the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e(a). We will affirm in part and vacate in part.

## I. Background

Small is a New Jersey state prisoner. He is a paraplegic and confined to a wheelchair. As relevant here, at various times between June and September 2004, and again between May 2005 and January 2008, Small was a pretrial detainee at CCCF. Each time, he entered CCCF with his own wheelchair equipped with leg rests.

In March 2006, Small filed this action, pro se, under 42 U.S.C. § 1983. The District Court appointed pro bono counsel, and a second amended complaint was filed on January 15, 2008. In that complaint, Small asserted claims against Defendants arising from fourteen incidents that he alleged occurred between August 2004 and September 2006. Those incidents involved, among other misconduct, the use of excessive force, the denial of medical treatment, and the confiscation of his personal wheelchair and its replacement with one without leg rests. When left with what he alleges was an improper replacement, he claims he was unable to brush his teeth, shower, and on several occasions, was left to lie for days in his own excrement.

In late 2009, after the completion of merits discovery, Defendants moved for summary judgment, arguing, among other things, that Small failed to exhaust his administrative remedies pursuant to CCCF's grievance procedures before

3

filing suit.[1]  These procedures, which are set forth in CCCF's inmate handbook, are reproduced in full in the Appendix to this Opinion.  In broad summary, however, they provide that a prisoner may, within 15 days after a grievable incident, file a formal, written grievance on a grievance form or, if a grievance form is not available, on plain paper.  Grievable incidents include violations of civil, constitutional or statutory rights, criminal acts, and unsafe or unsanitary conditions. After a grievance is filed, it is reviewed by a grievance officer who time stamps and logs it into the prison computer system. If improperly filed, the grievance is returned to the prisoner. If properly filed and logged in, it is forwarded to the appropriate Shift Commander to be addressed within 72 hours.  If not resolved in that time, it is returned to the grievance officer for review and resolution within 10 days.  If the prisoner is not satisfied with the grievance officer's decision, he may appeal, in writing, to the Warden (or his designee) within 10 days.  The Warden's decision is final.

On May 11, 2010, the District Court denied Defendants' motions without prejudice and stated its intention to hold an evidentiary hearing to decide the exhaustion issue before reaching any of the other asserted bases for summary judgment. Initially, the Court gave Small the option of having an advisory jury serve as fact finder at the hearing, an option he accepted.  Shortly thereafter, however, the Court became aware of our then-recent decision in *Drippe v. Tobelinski*, 604 F.3d 778 (3d Cir. 2010), which stated, albeit in dicta, that exhaustion of administrative remedies is a question of law to be determined by the judge.  *Id.* at 782.  The Court provided Small with two options: (1) brief the issue further; or (2) withdraw his request for an advisory jury.  Small withdrew his request.

On June 23 and 24, 2010, the District Court held an evidentiary hearing to determine whether Small properly filed a grievance and thereafter exhausted each of the fourteen incidents of which he complained.   The Court heard

---

[1] The District Court granted Defendants' motions for leave to file an amended answer adding exhaustion of administrative remedies as an affirmative defense.

4

testimony from Small and two prison officials, Lt. Karen Taylor and Sgt. Reginald Atkins, and reviewed the extensive collection of documents Small submitted to demonstrate his compliance with CCCF's grievance procedures. The Court went through the grievances one by one, ultimately concluding that Small failed to exhaust all but one of them, and explaining at length why it had reached that conclusion. By order entered June 25, 2010, the Court dismissed the complaint as to all but that one, and after it eventually settled, the Court entered the final order in the case on March 4, 2011. Small appealed. We granted Small's motion for appointment of counsel on appeal.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. We have jurisdiction under 28 U.S.C. § 1291. We review the determination of a failure to exhaust de novo, including whether that determination was properly made by a judge rather than a jury. *Spruill v. Gillis*, 372 F.3d 218, 226 (3d Cir. 2004); *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir. 2003). We accept the Court's factual conclusions unless clearly erroneous, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 215 F.3d 407, 409 (3d Cir. 2000), and will, therefore, "upset a finding of fact . . . only if [we have] 'the definite and firm conviction that a mistake has been committed.'" *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 92 (3d Cir. 1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). We must, of course, accord respect to determinations of the credibility of witnesses. *United States v. Igbonwa*, 120 F.3d 437, 441 (3d Cir. 1997) (citing *Anderson v. Bessemer City, N.C.,* 470 U.S. 564, 575 (1985)).

## III. Analysis

In an effort to curb the number of prisoner filings in the federal courts, Congress enacted the PLRA which, as relevant here, mandates that prisoners exhaust internal prison grievance procedures before filing suit. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84 (2006); *Spruill*, 372 F.3d at 222. The exhaustion provision of

the PLRA reads:

> No action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff. *Jones v. Bock*, 549 U.S. 199, 212, 216–17 (2007); *see Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir. 2002) (holding that failure to exhaust is an affirmative defense and finding that the district court erred in imposing an improperly heightened pleading standard that required the prisoner not only to plead, but also to prove, exhaustion in the complaint). Furthermore, the defendant must prove that the prisoner-plaintiff failed to exhaust *each* of his claims. There is no "total exhaustion" rule permitting dismissal of an entire action because of one unexhausted claim. *Jones*, 549 U.S. at 220–24.

### A. Exhaustion: For a Judge or a Jury?

Small argues that, under the PLRA, a jury, not a judge, should determine factual disputes relating to the issue of exhaustion because Seventh Amendment rights are implicated. In *Drippe*, however, we stated, unconditionally and in agreement with the Seventh Circuit's holding in *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2010), that exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts.[2] *Drippe*, 604 F.3d. at 781. At issue in *Drippe* were the timing requirements for raising exhaustion as an affirmative defense,

---

[2] The *Pavey* court confronted the identical question we face here: "whether a prisoner plaintiff in a suit for damages governed by the Prison Litigation Reform Act is entitled by the Seventh Amendment to a jury trial on any debatable factual issues relating to the defense of failure to exhaust administrative remedies." 544 F.3d at 740.

and so our statement, strong as it was, was dicta. We now hold what we so strongly signaled in *Drippe*, a conclusion that has been reached as well by every one of our sister circuits to have considered the issue.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. In an action under § 1983, the parties have a right to a jury trial on the merits, *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999), but this right does not guarantee resolution by a jury of all factual disputes. Whether the right to a jury trial applies depends upon "the nature of the issue . . . rather than the character of the overall action." *Ross v. Bernhard,* 396 U.S. 531, 538 (1970); *see Dillon v. Rogers*, 596 F.3d 260, 271–72 (5th Cir. 2010).

Under the PLRA, exhaustion is a precondition for bringing suit under § 1983. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . *until* such administrative remedies as are available are exhausted." (emphasis added)). As such, just as subject-matter jurisdiction, [3] personal jurisdiction, and venue, exhaustion is a

---

[3] Exhaustion is a non-jurisdictional prerequisite. *See Woodford*, 548 U.S. at 101. That is not to say, however, that the nature of a jurisdictional assessment, as a threshold inquiry, cannot provide guidance in an exhaustion inquiry. *See Dillon*, 596 F.3d at 272 ("Exhaustion resembles personal jurisdiction and venue in that it is an affirmative defense that allows defendants to assert that plaintiffs have not invoked the proper forum for resolving a dispute."); *Bryant v. Rich,* 530 F.3d 1368, 1374 (11th Cir. 2008) ("Even though a failure-to-exhaust defense is non-jurisdictional, it is like a defense for lack of jurisdiction in one important sense: Exhaustion of administrative remedies is a 'matter[ ] in abatement, and ordinarily [does] not deal with the merits.'" (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1360 at 78 n.15 (3d ed. 2004) (alterations in original))); *see also* 18 James Wm. Moore, *Moore's Federal Practice* § 131.30(3)(b) at 104 (3rd ed.

"threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." *Dillon*, 596 F.3d at 272 (emphasis added); *see Pavey*, 544 F.3d at 741 *(*"Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to."*); cf. McCarthy v. Madigan,* 503 U.S. 140, 144 (1992) (likening the doctrine of exhaustion of administrative remedies to "abstention, finality, and ripeness-that govern the timing of federal-court decisionmaking"); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 n.9 (1938) (describing exhaustion as a "rule of judicial administration"). Those of our sister circuits to have considered the issue have held that a plaintiff in a lawsuit governed by the PLRA is not entitled to a jury trial on the issue of exhaustion. *See Messa v. Goord*, 652 F.3d 305, 308–09 (2d Cir. 2011); *Dillon*, 596 F.3d at 272; *Pavey*, 544 F.3d at 742; *Bryant v. Rich,* 530 F.3d 1368, 1373-77 (11th Cir. 2008); *Wyatt v. Terhune,* 315 F.3d 1108, 1119–20 (9th Cir. 2003). No court has held, as Small would have us hold, that decision of that issue implicates Seventh Amendment rights.[4]

---

2008) (noting that a determination "that [a court] has no subject matter jurisdiction, that personal jurisdiction of defendants or of indispensable parties is lacking, that venue is improper, or that plaintiff has failed to comply with some prerequisite to filing suit, *such as exhaustion of administrative remedies . . .* is not a determination of the claim, but rather a refusal to hear it" (emphasis added)).

[4] Small's comparison of exhaustion to a statute of limitations, a non-jurisdictional affirmative defense which may be tried to a jury as of right, is ill fitting. Exhaustion and statutes of limitation are very different mechanisms, instituted to serve opposite purposes. As the Second Circuit observed, exhaustion is a key to open the courthouse door; statutes of limitation, conversely, close that door. *Messa*, 652 F.3d at 310. Furthermore, unlike a statute of limitations, a failure to exhaust is not always fatal. The prisoner-plaintiff may go back and exhaust if not foreclosed by grievance deadlines or if the judge has determined that the failure to exhaust was beyond the prisoner's control (e.g., prison officials prevented

As we have already suggested, it is of no consequence that here, as is often the case, there are disputed facts that must be resolved in order to determine whether the claims were exhausted. *See Bryant*, 530 F.3d at 1373–74 (holding the district court properly acted as fact finder in resolving conflicting evidence that raised a genuine issue of material fact about whether administrative remedies were available to the prisoner plaintiffs); *accord Messa*, 652 F.3d at 309; *Dillon*, 596 F.3d at 271. Matters of judicial administration often require judges to decide factual disputes and the Seventh Amendment is not implicated as long as the facts are not bound up with the merits of the underlying dispute. *See Messa*, 652 F.3d at 310 ("The Seventh Amendment does not promise a jury trial on all issues that might, as a practical matter, finally dispose of a case. Rather, it guarantees the right to a jury's resolution of the merits of the ultimate dispute." (citing *Markman v. Westview Instruments,* 517 U.S. 370, 377 (1996) and *In re Peterson,* 253 U.S. 300, 309–10 (1920))); *see also Alliance for Envtl. Renewal v. Pyramid Crossgates Co.,* 436 F.3d 82, 87–88 (2d Cir. 2006). Small does not suggest that the facts relating to his exhaustion of administrative remedies or his failure to exhaust are at all intertwined with the merits of his claims.

In sum, we agree with the Second, Fifth, Seventh, Ninth, and Eleventh Circuits and hold that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury. Accordingly, the District Court did not err by acting as the fact finder because exhaustion constitutes a preliminary issue for which no right to a jury trial exists.[5]

---

the prisoner from exhausting). *See Pavey*, 544 F.3d at 742.

[5] It would make sense from an efficiency standpoint that exhaustion determinations be made before discovery, or with only limited discovery. *See Pavey*, 544 F.3d at 742 ("We emphasize that in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved. If merits discovery is allowed to begin before that resolution, the statutory goal of sparing federal courts the burden of prisoner litigation until and unless the prisoner has exhausted his administrative remedies will not be achieved.").

## B. District Court's Findings of Fact

Having determined that the District Court did not err by serving as fact finder on the exhaustion issue, we turn our attention to the Court's findings themselves, findings we must accept unless clearly erroneous. The Court correctly placed the burden on Defendants to prove non-exhaustion and conducted a two-day, painstakingly thorough inquiry into the exhaustion issue as to each of Small's claims. (J.A. 83–437). The Court then carefully, and in much detail, reviewed the testimony and documentary evidence, made credibility determinations to which we must defer, and rendered its decision.

### i. Availability of Administrative Remedies

Although the availability of administrative remedies to a prisoner is a question of law, *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (citing *Ray,* 285 F.3d at 291), it necessarily involves a factual inquiry. *See Dillon*, 596 F.3d at 266 ("[W]hile it is a question of law whether administrative remedies qualify as being 'available' under 42 U.S.C. § 1997e(a), availability may sometimes turn on questions of fact."). "'Available' means 'capable of use; at hand.'" *Brown*, 312 F.3d at 113 (citing *Webster's II, New Riverside University Dictionary* 141 (1994 ed.)). Remedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes. *Id*.; *see Dillon,* 596 F.3d at 268 (recognizing "the importance of ensuring that inmates have avenues for discovering the procedural rules governing their grievances"); *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1323 (11th Cir. 2007) ("That which is unknown and unknowable is unavailable . . . .")).

The District Court found that Small received an inmate handbook (which, as we have noted, outlines CCCF's grievance procedures) upon his entry to the prison, or shortly

---

Here, merits discovery had been completed, although only limited discovery would likely have been necessary on the exhaustion issue itself.

thereafter,[6] and, in any event, that he was aware of those procedures. We agree that, wholly aside from whether Small in fact was given a handbook, there was ample evidence that he nonetheless knew of, and had access to, CCCF's grievance procedures and, thus, that administrative remedies were "available" to him.

Although Small continues to contend he did not receive a handbook until 2007, and therefore was unaware until then of the grievance procedures, we cannot help but observe that, among other things, he properly filed his first grievance form, fully compliant with those procedures, on August 30, 2004. Indeed, Small testified that by that time he knew of the procedures and the need to file a formal grievance. He also testified that although he had access to the law library, he never requested a copy of the handbook. Finally, although he claims that prison officials prevented him from accessing grievance forms, he testified that these alleged obstructionist efforts did not prevent him from obtaining a form, one way or another, when he needed one. In any event, the procedures allow grievances to be filed on plain paper.

In sum, the record is clear that Small knew of, and was able to access, CCCF's grievance procedures. We, thus, conclude, that administrative remedies were available to him.

### ii. Substantial Compliance with CCCF's Grievance Procedures

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that

---

[6] For a host of reasons, the District Court did not find credible Small's assertion that he did not receive a handbook before 2007, including the undisputed fact that CCCF issues a handbook during the intake process, and so it was unbelievable that Small never received even one despite his several readmissions to CCCF. The Court also found that even if Small had never been given a handbook, they were readily available at CCCF and he could easily have obtained one.

11

are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (citation omitted) (quoting *Woodford*, 548 U.S. at 88). To "complete the administrative review process," we have held, means "substantial" compliance with the prison's grievance procedures. *See Spruill,* 372 F.3d at 231 (citing *Nyhuis v. Reno*, 204 F.3d 65, 77–78 (3d Cir. 2000)). The District Court found, in its review of the grievances at issue before us, that Small had not substantially complied with CCCF's grievance procedures as to any of them, for different reasons specific to each one, and had thereby failed to exhaust his administrative remedies.[7]

It has been with some difficulty that we have parsed out the who, what, where, and when regarding each of the grievances at issue, and we applaud the District Court for its yeoman efforts in this regard. Indeed, we agree with the Court as to the failings of the vast majority of the grievances and, without being as specific as the Court, we briefly explain why. Submitting a Sick Call Request, for example, a form on which a prisoner requests medical attention, is not a submission in compliance with CCCF's grievance procedures. As the District Court explained, "Sick Call Requests are prospective requests for medical services, they are not retrospective complaints about the denial of services." (J.A. 442). Moreover, any asserted belief that a medical-related grievance was to be filed by means of a Sick Call Request form is belied by Small's submission of grievance forms complaining about deficient medical care. Beyond even that, Small testified to the difference between a Sick Call Request, "a small little form that you fill out with your information on it to request medical attention," (*Id*. at 155), and a grievance form, "a much larger form that you fill out if you have a complaint against something in the institution."

---

[7] Small concedes that certain incidents were not grieved in substantial compliance with CCCF's grievance procedures: July 7, 2006, July 20, 2006, and August 14, 2006, and does not take issue with the District Court's dismissal of the claims arising from these incidents. Small also testified that he did not wish to pursue the grievance relating to the incident of August 16, 2004.

(*Id*. at 156).

Similarly, the District Court properly discounted letters Small wrote that were not submitted in compliance with CCCF's requirements for the proper filing of grievances (e.g., they were not directed to the grievance officer or any corrections staff, were not filed within 15 days of the alleged incident, or failed to identify the specifics of the incident); indeed, the majority of those letters were sent to individuals outside of prison administration, thus failing to serve the basic purpose of the grievance filing mechanism, which is to notify officials of a problem and provide an opportunity for efficient correction.  With respect to the grievances, the subject of Small's letters and Sick Call Request forms, the Court correctly concluded that Small's efforts were not substantially compliant with CCCF's grievance procedures and so could not serve as a basis for satisfying the PLRA's exhaustion requirement.

We believe, however, that the District Court erred insofar as it found that although grievances had been submitted in compliance with CCCF's procedures  as to the incidents of June 18, 2005 and June 28, 2005, those grievances should nonetheless be dismissed because Small did not file an appeal as to either one.[8]  The Court concluded that Small's failure to appeal rendered his efforts noncompliant with CCCF's procedures and, therefore, that his administrative remedies as to them were unexhausted.  There is no dispute, however, that there was no decision as to either of those grievances (or, we note, any of the others now before us), and we disagree with the Court that substantial compliance with CCCF's procedures requires appealing non-decisions.  CCCF's procedures discuss only the appeal of a *decision* with which the inmate is not satisfied, and do not mention what must or even could be done by the inmate when a decision is never made: "If the inmate is not satisfied with the grievance officer's decision, He/She may appeal to the Warden . . . ." (J.A. 675).  Thus, the Court erroneously read

---

[8] The District Court found that certain other grievances had not been appealed, but those grievances did not, for other reasons, comply with CCCF's grievance procedures.

13

an additional requirement into CCCF's grievance procedures.[9]

Because CCCF procedures did not contemplate an appeal from a non-decision, when Small failed to receive even a response to the grievances addressing the June 18 and June 28, 2005 incidents, much less a decision as to those grievances, the appeals process was unavailable to him. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (agreeing with the Eighth and Fifth Circuits that "administrative remedies [are] exhausted when prison officials fail to respond to inmate grievances because those remedies ha[ve] become 'unavailable'"); *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002) ("[T]he failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable"); see also *Boyd v. Corrs. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) ("[A]dministrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."); *cf. Brown,* 312 F.3d at 111 ("The PLRA does not require exhaustion of all remedies. Rather, it requires exhaustion of such administrative remedies as are available." (internal quotation marks omitted)). Accordingly, we will vacate the order of the District Court dismissing those grievances and remand for further proceedings as to them.[10]

---

[9] That Small *could* appeal a non-decision, as the District Court noted, was evident by his 2006 letter to Superintendent Eric Taylor complaining about the lack of response to a previously filed grievance, says nothing about whether he was *required* to do so by virtue of a CCCF procedural requirement to appeal a non-decision. (J.A. 153–54, 444, 841).

[10] We need not reach whether the District Court should have deemed the two remaining grievances to be part of a "continuing violation" for purposes of the exhaustion requirement. At least one incident must have been properly grieved for the doctrine to apply assuming, of course, that the doctrine would apply at all. In his opening brief, Small

## IV. Conclusion

We will vacate the order of the District Court dismissing the grievances arising from the incidents of June 18, 2005 and June 28, 2005, and remand for further proceedings consistent with this Opinion. We will, in all other respects, affirm the order of the District Court dismissing the complaint.

---

argues that he was "deprived of a wheelchair with leg rests continuously from April 13, 2006." (Appellant's Br. 39). At oral argument, counsel confirmed that the alleged "continuing violation" occurred from April 2006 onward, or at least from July 2006 onward. There was, however, no properly grieved incident on or after these dates to serve as the basis for a continuing violation.

_____

APPENDIX

_____

## INMATE GRIEVANCE PROCEDURE[1]

It is the policy of this Department to provide to its inmates an internal grievance mechanism for the resolution of Complaints arising from institutional matters, so as to reduce the need for litigation and afford everyone the opportunity to have input in the improvement of the facility operations.

This inmate grievance procedure is an internal administrative means for the resolution of complaint and the identification of potentially problematic areas. This procedure is designed to supplement, but not replace, the informal communication process or the institutional disciplinary procedure.

An inmate may file a grievance at any time to bring a problem to the attention of staff or to appeal a specific action. An inmate may file a grievance only for him/herself, although an inmate may assist another inmate in filing a grievance.

Only one grievance may be filed at one time on a single incident or item of concern. An inmate may withdraw a previously filed grievance at any time.

No staff member may retaliate against an inmate for filing or withdrawing a grievance.

A grievance may be initiated for any one the following reasons:

- An alleged violation of civil, constitutional or statutory right or policy

---

[1] Text reproduced from the Camden County Correctional Facility's inmate handbook. (J.A. 674–75). Any errors are in the original.

- An alleged criminal or prohibited act by a staff member
- To resolve a condition existing within the facility that creates unsafe or unsanitary living conditions
- To appeal decisions such as restoration of lost good time, modification of restricted visiting, correspondence or other privileges.
- Disciplinary actions may be appealed but not grieved.

An inappropriately filed grievance or one that is directed towards an issue that cannot be grieved will be returned to the inmate.

Inmates are encouraged to resolve grievances informally by voicing their grievances to any staff member. The grievances must be voiced in a courteous, responsible and clear fashion. When presented with an informal grievance the staff member may initiate corrective action if the action is within the normal scope of the employee responsibility. However, if the inmate grievance is beyond the scope of the staff member, he shall notify their supervisor as soon as practical. All reasonable steps will be taken to resolve the grievances informally within the approved discretion of the Shift Commander. If the matter can not or should not be resolved the inmate may initiate a formal grievance.

An inmate of the Camden County Department of Corrections may file a formal, written grievance anytime within 15 days after any event has occurred where a grievance may be warranted. The inmate will be provided with a grievance form by any staff member. However, the inmate may use plain paper, if no grievance forms are available. If a grievance on plain paper is received by the grievance officer. The inmate will be supplied with grievance form with 24 hours of the date grievance was received. All staff members will instruct the inmate on the basic requirements for filling out the form, if requested.

All grievances will be collected daily and time stamped and logged by the Department's Grievance Officer. The grievance officer will review all grievances to assure that the complaint can be grieved.

If the grievance meets our guidelines, it will be forwarded to the appropriate Shift Commander for possible resolution within 72 hours of an investigation.

If the grievance is not resolved in 72 hours it will be return to the grievance officer for review and resolution within 10 days. If the inmate is not satisfied with the grievance officer's decision, He/She may appeal to the Warden (or his designee) in 10 days in writing. The decision will be final.