**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1192
_____

RHONSHAWN JACKSON,
Appellant

v.

JEFFREY A. BEARD; SHIRLEY M. SMEAL; SUPT. LAWLER; DEPUTY ECKARD;
CONNIE GREEN; MAJOR WAKEFIELD; LT. STEVENS; DIANE LANE; DR. A
REIS; C.O. CATES; C.O. SEMPLE; C.O. PYLE; C.O. WILLIAMS; VERNON
SPELLMAN; C/O LONG; C.O. CLARK; C.O. MCCLOSKEY; C/O MCCOY; C.O.
DONALDSON; CO SHROYER; C.O. DUNKLE; SUPT MURRAY; SUPT DIDDY;
SUPT SOUTHERS; GIMBLE; TONYA HEIST
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-11-cv-01431)
District Judge: Honorable Edwin M. Kosik
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 1, 2017
Before: RESTREPO, SCIRICA and FISHER, Circuit Judges

(Opinion filed August 4, 2017)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Rhonshawn Jackson appeals pro se from the District Court's adverse judgment in his 42 U.S.C. § 1983 action.  We will affirm.

I.

Jackson initiated this action in 2011 against various employees of the Pennsylvania Department of Corrections—mostly officials at SCI-Huntingdon and SCI-Camp Hill—asserting a litany of constitutional claims arising from his alleged mistreatment at these institutions.  This controversy started, according to Jackson's amended complaint, on March 19, 2009, when he "was involved in [an] assault on several guards which incited a riot at SCI-Houtzdale."  He alleged that he was transferred the next day to the Restricted Housing Unit at SCI-Huntingdon, and that Defendants "put into motion a 'campaign of retaliation and harassment.'"

Jackson's 27-page complaint contains a slew of allegations—many failing to identify which Defendants were involved in claimed violations and when the alleged violations occurred.  In brief summary, Jackson claimed that various Defendants assaulted him; destroyed his property; issued falsified disciplinary reports; denied him meals, showers, and recreation; improperly handled his grievances; retaliated against him for filing grievances; failed to provide him medical treatment; and "generally subjected him to psychological torture."

Two years into the litigation, acting pursuant to Federal Rule of Civil Procedure 12(b)(6), the District Court dismissed all but six of Jackson's claims—these six concerning alleged mistreatment at SCI-Huntingdon between June 2010 and January

2011:[1] two excessive-force claims; a retaliation claim; a denial-of-meals claim; a failure-to-protect claim, and a due-process grievance-obstruction claim.

By order entered on July 5, 2016, the District Court awarded summary judgment on five of these six remaining claims, rejecting them on their merits. It denied summary judgment, however, on the failure-to-protect claim—characterizing it as "colorable"[2]—and referred it to the Magistrate Judge to conduct an evidentiary hearing to determine whether Jackson had properly exhausted it.[3] After an evidentiary hearing, the Magistrate Judge issued a Report and Recommendation concluding that he had not, and recommending that judgment be entered on this sole remaining claim. The District Court adopted the Report and Recommendation by order entered on October 25, 2016, and directed the clerk to close the case. Following the District Court's denials of Jackson's motions for reconsideration, this timely appeal ensued.

II.

We have jurisdiction under 28 U.S.C. § 1291. On appeal, Jackson challenges various aspects of the evidentiary hearing, and the District Court's subsequent entry of judgment before receiving his objections to the Report and Recommendation. He also

---

[1] Jackson alleged that he was transferred to SCI-Camp Hill in January 2011.

[2] In this claim Jackson alleged that various Defendants told other dangerous inmates that Jackson was a snitch.

[3] The District Court opined that, while Jackson could "not bring a [freestanding] due process claim based upon alleged interference with his grievances, these allegations [] preclude summary judgment on the Defendants' affirmative defense of failure to exhaust."

challenges the District Court's summary-judgment order, and its earlier order dismissing some of his retaliation claims under Rule 12(b)(6).

**The evidentiary hearing**

We will first address the claims related to the evidentiary hearing and the District Court's subsequent entry of judgment, as they are the thrust of Jackson's appeal. We "review the determination of a failure to exhaust [following an evidentiary hearing] de novo," but will "accept the Court's factual conclusions unless clearly erroneous." Small v. Camden County, 728 F.3d 265, 268 (3d Cir. 2013) (internal citations omitted).

The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust available administrative remedies before filing suit, see 42 U.S.C. § 1997e(a), and this "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). DC-ADM 804, which governs the grievance and appeals process in Pennsylvania correctional institutions, provides for a three-step process,[4] and a prisoner must follow each of these steps to properly exhaust his administrative remedies under the PLRA. See Booth v. Churner, 206 F.3d 289, 299 (3d Cir. 2000) (noting that plaintiff "did not take full

---

[4] The three stages are: "Initial Review (DC–ADM–804 Part VI.B), which addresses the inmate's filed grievance; the first appeal from the Initial Review, known as Appeal to Facility Manager (DC–ADM–804 Part VI.C); and a second and final appeal, the Appeal to Secretary's Office of Inmate Grievances and Appeals (DC–ADM–804 Part VI.D)." Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004).

advantage of the administrative procedures available to him" in failing to use steps two and three of DC–ADM 804).

Defendants argued below in their motion for summary judgment that Jackson failed to exhaust his administrative remedies with respect to the six claims that made it to the summary-judgement stage because he never reached the final stage of review. In support of their motion, they submitted a record of all the grievances Jackson filed during the timeframe relevant to these claims, showing that he never reached the final stage for any of these grievances. They also submitted the affidavit of Connie Green, Assistant to the Superintendent at SCI-Huntingdon, who stated that she "processed every grievance [] Jackson [] filed while he was at SCI-Huntingdon," and that "[a]t no time did [she] sabotage or fail to process any grievance or appeal filed by [] Jackson[.]"

While Jackson alleged that various Defendants had obstructed his access to the grievance system, the Magistrate Judge found these allegations incredible at the evidentiary hearing, observing that "prison officials actually went out of their way to assist and accommodate Jackson." The Magistrate Judge found no obstruction, concluding that Jackson's "failure to fully complete the grievance process was consistent with [his] longstanding grievance history, which is marked by multiple grievances which were never fully exhausted," and that a "review of the actual grievances submitted by Jackson while housed at SCI-Huntingdon between November 2010 and January 2011, contradicts his claim of denial of access to the grievance process."

5

Jackson re-asserts this generic obstruction claim on appeal, contending that "[t]hroughout this entire litigation . . . defendants . . . obstructed his grievances from being filed by ripping them up, throwing them away, or just flatout ignoring them [and] not responding to them." In support of this contention, he cites his own affidavit and the declarations of other prisoners he submitted below in opposition to Defendants' motion for summary judgment. But none of these documents[5]—or any other record evidence— shows that the Magistrate Judge's exhaustion findings were "clearly erroneous." Small, 728 F.3d at 268. The Magistrate Judge found incredible Jackson's testimony that he was obstructed from filing grievances, and Jackson has pointed to nothing that would warrant our disturbing this finding.[6]

Jackson also argues that the Magistrate Judge's resolution of the exhaustion question violated the Seventh Amendment because "[his] retaliation/obstruction claim

---

[5] These documents mostly provide support for Jackson's factual accounts of the underlying incidents with prison staff, but do not address the dispositive issue in this appeal—whether Defendants prevented Jackson from reaching the final stage of review. Jackson argues on appeal that "none of [his] favorable evidence [and] witness declarations were even considered or mentioned in the [Report and Recommendation] by [the] Magistrate [Judge] after [the] evidentiary hearing." While it appears that the Magistrate Judge did not specifically reference this evidence (mainly unpersuasive prisoner declarations), the Magistrate Judge relied on other evidence that amply supported his findings.

[6] This same analysis applies with equal force to Jackson's November 2010 denial-of-meals claim, and we thus affirm the rejection of this claim on this ground. See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 321 (3d Cir. 2013) ("[W]e can affirm on any basis supported by the record.") (internal citation omitted).

6

[was] intertwined with his exhaustion issue." While Seventh Amendment problems may arise when "facts relating to his exhaustion of administrative remedies or [a] failure to exhaust are at all intertwined with the merits of [a plaintiff's] claims," Small, 728 F.3d at 270, there was no such problem here. The District Court dismissed Jackson's grievance-related retaliation claims under Rule 12(b)(6) three years before the evidentiary hearing, and for reasons unrelated to his failure to exhaust them.

Jackson's last argument related to the evidentiary hearing is that the District Court erred by adopting the Magistrate Judge's Report and Recommendation before his objections were due. It appears that the District Court adopted the Report and Recommendation the same day Jackson's objections were due (October 24, 2016), having not received them. Jackson claims that he mailed his objections on October 21, 2016, though the District Court stated that it never received them. We need not resolve this timeliness dispute because Jackson appended a copy of his objections to his motion for reconsideration, and they are meritless. He essentially advanced in these objections the same unconvincing arguments he now asserts on appeal.

**The Rule 12(b)(6) dismissal**

We exercise plenary review over the District Court's dismissal under Rule 12(b)(6), W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 (3d Cir. 2010), and ask whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Jackson

challenges the Court's dismissal of three of his retaliation claims.

First, he argues that the District Court erred by dismissing his April 27, 2009

retaliation claim, in which he alleged that various Defendants denied him dinner because

he refused their sexual advances. Because Jackson did not file his complaint until August

2011, this claim is plainly time-barred by Pennsylvania's two-year statute of limitations

applicable to § 1983 claims.[7] Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009).

He next argues that the District Court erred by dismissing his November 2010

retaliation claim, in which he alleged that various Defendants told other inmates he was a

snitch because of his grievance activity. The District Court did not dismiss this claim; it

treated it as a failure-to-protect claim, and ultimately concluded (after the evidentiary

hearing) that Jackson had not exhausted it. Jackson did not style this claim as a

retaliation claim in his complaint.[8] Nor did he object to the District Court's

characterization of it as a failure-to-protect claim. Indeed, in his brief in opposition to

Defendants' motion for summary judgment, he styled the claim as such, and cited a

failure-to-protect case to support it. He cannot now argue, for the first time on appeal,

---

[7] While the District Court appears to have dismissed this claim on the basis that Jackson had failed to allege a protected activity, "we can affirm on any basis supported by the record." Christ the King Manor, Inc., 730 F.3d at 321.

[8] He claimed that various Defendants "insinuate[d] that [he] was a 'snitch' . . . to highly dangerous prisoners who, in turn, threatened, ridiculed, humiliated, and assaulted [him]." He never used the term "retaliation"—or any comparable term—to alert the Court that he was attempting to assert a retaliation claim.

8

that the District Court improperly dismissed (or mistreated) this claim. See DIRECTV Inc. v. Seijas, 508 F.3d 123, 125 n.1 (3d Cir. 2007).

Finally, he argues that the District Court erred by dismissing his confiscation-of-property claim, arguing that "this was not a regular deprivation of property claim[;] this was a retaliatory act employed by the defendants to deter [him] from filing any further grievances [and] reporting any future abuses." While Jackson alleged in his complaint that Defendants retaliated against him by confiscating his mail and books, he did not allege any underlying protected activity—an essential element of retaliation, Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)—that might support such a claim. In other words, he did not state a plausible claim to relief.[9]

**The award of summary judgment**

We exercise plenary review over the District Court's award of summary judgment, Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009), which Jackson challenges on procedural grounds. He argues that the "Court provided Affirmative Defenses for defendants during Summary Judgment"—claiming that Defendants failed to oppose five of his claims, "[y]et the court ruled in [their] favor on [] unopposed [or] unchallenged claim[s]." But Defendants addressed two of these claims in their motion for summary

---

[9] While Jackson argues for the first time on appeal that Defendants retaliated against him for filing grievances, our review of the District Court's dismissal under Rule 12(b)(6) is limited to "judging the sufficiency of a pleading[.]" W. Penn Allegheny Health Sys. Inc., 627 F.3d at 98.

judgment, and the other three in their motion to dismiss, and Jackson has not argued that the District Court erred substantively by dismissing them. We thus detect no error.

**Conclusion**

Jackson has identified no error in any of the District Court's rulings. We will thus affirm its judgment.[10]

---

[10] We perceive no error in the District Court's denials of Jackson's motions for reconsideration. Jackson failed to demonstrate any of the grounds that might support reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).