**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2769
_____

ABDUL KANU,
                    Appellant

v.

WARDEN LINDSEY; LEACH, Chief of Security; MICHAEL MOORE, Classification;
PANARELLO, Sgt; SGT. BRYAN; MS. APT; GOETTER, C.E.R.T. Officer; ATKINS,
C.E.R.T. Officer; OFFICER WACKOO; C.E.C.,
Individually and in their Official Capacities
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civ. No. 2:13-cv-06451)
District Judge:  Hon. Joseph F. Leeson, Jr.
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 19, 2017

Before:  RESTREPO, SCIRICA and FISHER, *Circuit Judges*

(Opinion filed June 26, 2018)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Proceeding pro se, Abdul Kanu brought this civil rights action against officials of the George W. Hill Correctional Facility—a Delaware County prison—alleging they violated his constitutional rights while he was a pretrial detainee there in 2013. *See* U.S. Const. amends. I, XIV; 42 U.S.C. § 1983. The parties filed cross-motions for summary judgment, and the trial court entered summary judgment in favor of Defendants and against Kanu. He appeals. For the reasons that follow, we will affirm.

**I.**

Beginning in May 2013, while awaiting trial in state court on attempted murder, aggravated assault, and related charges, Kanu was held without bail at the George W. Hill Correctional Facility ("Hill"), a Delaware County prison then operated by Community Education Centers, Inc. (CEC). Because of the violent nature of Kanu's alleged offenses, Hill's classification committee placed him in the prison's maximum security unit. During the intake process, an officer observed a tattoo on Kanu's chest indicating a possible gang affiliation. Kanu denied being a gang member, but the officer thought he was being untruthful and referred Kanu for review by the gang committee.

On August 10, 2013, Correctional Officer Goetter directed Kanu to surrender his bottom bunk to another inmate with medical needs and to move to another cell. In incident and disciplinary reports, Goetter alleged Kanu began yelling, and when asked to

2

stop, yelled to other inmates: "We don't have to listen to these fake cops. There's more of us than them." R103, R109. When asked to stop again, Kanu allegedly said to the correctional officer: "Fuck you. I don't need to listen to you as I'm going up state soon and I have no problem fucking up one of you [officers] before I leave." R103, R109. Goetter then summoned Sergeant Panarello, who placed Kanu in handcuffs. Kanu threatened Panarello as well. Significantly, Kanu admits in his complaint that he "used obscene language towards Panarello." R9 ¶ 11. Kanu was then placed in a Special Management Unit (SMU) cell pending a hearing on disciplinary charges.

The next morning, Panarello interviewed Kanu about the charges against him. According to the interview report, Kanu admitted to making the provocative statements attributed to him in the incident and disciplinary reports. Kanu said, among other things, that the officers should watch how they speak to him because he was willing to fight. When Panarello inquired further, Kanu stated: "Fuck these fake nut cops[.] I don't need to listen to any of them[.] I'm a grown man." R106. Panarello informed Kanu that he would remain in SMU housing because of his hostility toward staff and attempt to incite the other inmates. Kanu told him to "[f]uck off." R106.

A hearing was held before Officer Abt on August 20 and 21, 2013. Kanu alleges he sought to call four witnesses and now claims he was entitled to review of security camera footage as evidence. Abt interviewed two witnesses, inmates Steven Davis and Omar Rollie. A third potential witness, inmate Emil Dale, refused to provide a statement,

3

telling a correctional officer "to eat his gun." R105. There is no indication in the record that Kanu sought to introduce video evidence or that Abt reviewed it. The hearing officer found Kanu was guilty of the charges and imposed 20 days of disciplinary detention, backdated to August 10, 2013, and ending on August 30, 2013. Accordingly, Kanu was in disciplinary detention between August 10 and August 30. On August 30, he was removed from disciplinary detention and placed into administrative segregation.[1] Kanu remained in administrative segregation until October 19, 2013. He apparently filed numerous inmate requests and grievances respecting his disciplinary and administrative confinement.

## II.

In November 2013, Kanu filed a pro se complaint against CEC and several prison officials,[2] alleging procedural and substantive due process, equal protection, and First Amendment violations relating to his disciplinary hearing, his 20 days' disciplinary detention, and his subsequent placement into administrative segregation. The trial court

---

[1] Although Kanu was placed in the same housing unit for both administrative segregation and disciplinary detention, these housing classifications are materially different. For example, inmates in disciplinary detention lack privileges such as ability to use the commissary and retain personal items in their cells. *See* Moore Aff. ¶ 9, R144.

[2] Kanu misidentified several individual Defendants. The trial court identified the individual Defendants as Warden Lindsey, Mr. Leach, Michael Moore, Sergeant Panarello, Sergeant Bryan, Chris Atkins, Ms. Abt, Officer Wackoo, and Officer Goetter.

denied Defendants' dismissal motion. After discovery closed, the parties filed cross-motions for summary judgment.

In March 2016, the trial court entered summary judgment in favor of Defendants and against Kanu. Finding a genuine issue of material fact as to Kanu's exhaustion efforts, the court denied Defendants' motion for summary judgment on exhaustion grounds and proceeded to evaluate the merits.[3]

The court entered summary judgment for Defendants on all Kanu's due process, equal protection, and First Amendment claims.[4] Because Kanu's appeal, liberally construed, appears to challenge only the trial court's rulings on his due process claims, we address only those claims here.

The trial court first evaluated Kanu's substantive due process claims. As to Kanu's claim his disciplinary detention arose from a falsified misconduct report, the

_____

[3] We note "exhaustion constitutes a preliminary issue for which no right to a jury trial exists." *Paladino v. Newsome*, 885 F.3d 203, 210 (3d Cir. 2018) (quoting *Small v. Camden Cty.*, 728 F.3d 265, 271 (3d Cir 2013)). Accordingly, the trial court was empowered to decide the issue before reaching the merits, acting as the fact finder to "resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id.* (quoting *Small*, 728 F.3d at 271).

[4] The trial court granted summary judgment for CEC because Kanu made no specific allegations respecting CEC and produced no evidence establishing prison officials acted pursuant to a CEC policy or custom as required under *Monell v. New York Department of Social Services*, 336 U.S. 658 (1978). For the same reasons it entered summary judgment for the moving individual Defendants, the trial court entered summary judgment sua sponte for the non-moving Defendants—Panarello, Atkins, and Wackoo—who were never served with the complaint.

court found Kanu had failed to state a substantive due process claim because he had been afforded procedural due process before being disciplined. The court also observed that Kanu admitted in his complaint that he "used obscene language" toward Defendant Panarello, belying his claim that the misconduct report was falsified. As to Kanu's claim his placement in administrative segregation following his disciplinary detention was a punishment violating his substantive due process rights, the court found Kanu had offered no evidence the administrative segregation was imposed as punishment. To the contrary, Defendant Moore's uncontroverted affidavit established Kanu's placement in administrative segregation was "solely for the safety of the facility, its staff, and its residents" in light of "the violent nature of [Plaintiff's] alleged crime, and because of his threats of violence and stated intention to rebel against staff." R174 (alteration in original) (quoting Moore Aff. ¶ 7, R143). Defendants also offered evidence showing the prison's concern about Kanu's possible gang ties.

The court then turned to Kanu's procedural due process challenges to his disciplinary detention and the administrative segregation that followed.

With respect to his disciplinary detention, Kanu alleged in his complaint that Defendant Abt "never notified Kanu that he had the right to call witnesses and present documentary evidence" at his hearing. R11 ¶ 20. He abandoned this allegation in his response to Defendants' summary judgment motion, however, admitting Abt "asked [him] if he had any witnesses and [that he] stated Steven Davis, Omar Rollie, Emil Dale,

6

and Willie Snowden." Dist. Ct. Dkt. #64 at 5. Kanu alleged that Abt did not interview Snowden but made no allegations respecting the other witnesses. He also alleged, for the first time,[5] that Abt had not "reviewed the camera." Dist. Ct. Dkt. #64 at 5. The trial court held that Abt's interview of three witnesses,[6] consistent with the Commonwealth's policy, comported with procedural due process, and that Abt's failure to review video surveillance footage did not violate due process. Consistent with its holding, the court found Kanu's allegations and the evidence established he was given notice of the disciplinary charges at least twenty-four hours before his hearing, Kanu was given a hearing with the right to present witnesses and documentary evidence, and Abt provided him with a written statement listing the reason for the decision and the supporting evidence.

As to Kanu's claim his administrative segregation violated procedural due process, the trial court found no violation because Kanu was provided notice and had an opportunity to be heard through the grievance process.

Because Kanu offered no evidence in support of his substantive and procedural due process claims, the trial court entered summary judgment for Defendants. Giving appropriate deference to Defendants' professional expertise, the court also found that

---

[5] In his complaint, Kanu states "[t]he cameras on Unit 10B saw what happened," R14, but he did not allege that he asked Abt to review the cameras or that she refused to do so.

[6] From the record, it appears Abt attempted unsuccessfully to interview the third witness, Emil Dale.

7

both the disciplinary detention imposed and subsequent administrative segregation were reasonably related to the prison's legitimate interest in maintaining security and order.

Kanu timely filed this pro se appeal.

### III.

The trial court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the trial court's grant of summary judgment, applying the same standard as the trial court. *See Paladino v. Newsome*, 885 F.3d 203, 207 n.16 (3d Cir. 2018). Summary judgment is proper where, viewing the evidence and drawing all inferences in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A party opposing a motion for summary judgment must cite to specific materials in the record that demonstrate the existence of a disputed issue of material fact. *See* Fed. R. Civ. P. 56(c)(1)(A). We may affirm the trial court on any basis supported by the record. *See Migliaro v. Fidelity Nat'l Indemnity Ins. Co.*, 880 F.3d 660, 664 n.6 (3d Cir. 2018) (citing *Helvering v. Gowran*, 302 U.S. 238, 245 (1937)).

**IV.**

As stated, construing Kanu's pro se brief liberally, he challenges only the District Court's rulings on his due process claims.[7] Kanu argues Steven Davis's statement to Defendant Abt was disregarded; the camera footage was not reviewed; his disciplinary detention actually lasted until September 17, rather than August 30; and he never received notice or a hearing respecting his placement on administrative segregation.

Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the "underlying crime of which he stands accused." *Rapier v. Harris*, 172 F.3d 999, 1003–06 (7th Cir. 1999); *see also Bell v. Wolfish*, 441 U.S. 520, 535, 539 (1979); *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). However, the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the procedural due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974).[8] These protections include the right to receive written notice of the charges at least 24 hours before the

---

[7] On appeal, Kanu makes several arguments respecting the grievance process, some of which appear to be contradictory. Kanu references his use of the grievance procedure but argues the trial court erred in concluding he "exhausted administrative remedies by filing grievances." Appellant's Br. at 3. Because the trial court denied summary judgment on exhaustion grounds and proceeded to the merits, we do not reach Kanu's arguments about exhaustion.

[8] Although *Wolff* involved sentenced inmates, its protections apply to pretrial detainees as well. *See Bell*, 441 U.S. at 545; *see also Stevenson*, 495 F.3d at 70–71.

hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence. *See id.* at 563–66.

As to Kanu's claims concerning the opportunity to present witnesses and evidence at his hearing, a detainee's right to call witnesses and present documentary evidence is cabined by the prison's discretion to "keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority," as well as to refuse to allow specific documentary evidence. *See Wolff*, 418 U.S. at 565–66. The record indicates that the hearing officer interviewed at least two of the four witnesses put forth by Kanu and provided Kanu with a written statement of her findings. This is well within the *Wolff* framework.[9]  *See Wolff*, 418 U.S. at 565–66.

Kanu's allegation on appeal that Steven Davis's statement was disregarded is belied by the record, which shows Abt interviewed Steven Davis.[10]  And while the failure to review video evidence could rise to the level of a procedural due process violation in some cases, Kanu has not explained how Abt's failure to review video would be

---

[9] Contrary to Kanu's assertion that *Wolff* requires prison officials to explain a refusal to call witnesses, the Supreme Court noted that while it would be useful for them to do so, "we do not prescribe it." *Wolff*, 418 U.S. at 566.

[10] In the trial court, Kanu argued that the hearing disposition form did not contain a sufficient description of the witnesses' statements, and he submitted an affidavit from Steven Davis describing the events of August 10, 2013. *See* R69–R71. Davis's affidavit does not contradict the record and is not exculpatory.

exculpatory, particularly in light of his admissions he made obscene and provocative statements. Because the record establishes that the disciplinary hearing comported with procedural due process, and Kanu has offered no evidence to the contrary, we will affirm the trial court's conclusion that Kanu's procedural due process rights were not violated during his disciplinary hearing.

As stated, Kanu now alleges he was kept in disciplinary detention until September 17, 2013—beyond its August 30, 2013 expiration. Kanu points to an "Alerts" page from Hill's Offender Management System which states, in a September 17, 2013 entry, that "[p]er Mike Moore, [Kanu] remains on SMU." Appellant's Br., Ex. A. This entry does not support Kanu's assertion that he was not transferred from disciplinary detention to administrative segregation until September 17. It shows only that Kanu remained in the SMU, with no mention of disciplinary status. Both Hill's Inmate Housing History and Moore's affidavit, however, establish that Kanu was transferred to administrative segregation on August 30, 2013—the day his disciplinary detention expired—and Kanu has offered no evidence to the contrary.

Kanu also argues the prison violated procedural due process by never affording him notice or opportunity to be heard about his placement in administrative segregation. "Prison officials must provide detainees who are transferred into more restrictive housing for administrative purposes only an explanation of the reason for their transfer as well as an opportunity to respond." *Stevenson*, 495 F.3d at 70. This notice must be within a

11

"reasonable time" following the transfer, *id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 n.8 (1983)), and the opportunity to respond can be satisfied by written grievances, *see Helms*, 476 U.S. at 874. With respect to his placement in the SMU before his disciplinary hearing, Panarello immediately informed Kanu he would remain in SMU housing because of his hostility toward staff and attempt to incite the other inmates, and Kanu submitted a grievance that same day. With respect to his post-disciplinary administrative segregation, Kanu filed requests for information about, and several grievances challenging, his confinement in administrative segregation within four days of his move to this status. Kanu admitted in his complaint that Defendant Moore informed him on September 13, 2013—about two weeks after his disciplinary detention was completed—he was in administrative segregation because of concerns that he was going to "start a Chester v. Philly beef." R13 ¶ 29. We agree with the trial court that this complies with the notice and opportunity to be heard requirements set forth in *Stevenson*. *See Shoats v. Horn*, 213 F.3d 140, 144–45 (3d Cir. 2000).

The substantive due process protections afforded to pretrial detainees are set forth in *Bell*. *See* 441 U.S. at 535, 539. The Supreme Court held that while punishment may not be imposed on pretrial detainees before an adjudication of guilt, a restriction or condition of pretrial detention that is reasonably related to a legitimate government objective does not, without more, amount to punishment. *See id.*; *see also Rapier*, 172 F.3d at 1003 (noting that pretrial detainees can be punished for violating prison rules).

12

Any substantive due process claim is foreclosed because it is clear Kanu's pre- and post- disciplinary placement in the SMU was reasonably related to the legitimate goal of maintaining security and order. As discussed, Defendant Moore submitted an affidavit explaining "Kanu was placed on administrative segregation solely for the safety of the facility, its staff, and its residents" based on factors including "his threats of violence and stated intentions to rebel against staff." Moore Aff. ¶ 7, R143; *see Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007) ("In situations such as this, where the allegations of punishment are coextensive with the allegations that form the basis for the procedural due process claim, it will generally be sufficient for the prison officials to submit affidavits to show that the classification was appropriate based on reasonable prison management concerns. . . . A showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern . . . will typically foreclose the substantive due process inquiry."). Here, contemporaneous evidence in the record shows Kanu's behavior raised significant security concerns. *See, e.g.*, R96 (August 10, 2013 disciplinary report) (describing Kanu's obscene language and attempts to incite other inmates); R99 (August 11, 2013 investigation report) (explaining Kanu was advised he would "remain on SMU due to the fact he is still being hostile toward staff and h[ad] attempt[ed] to incite other inmates"). Kanu was able to file a grievance the day after he was placed in pre-hearing SMU housing and was afforded a hearing some nine days later. Kanu filed numerous grievances after being placed in

13

post-disciplinary administrative segregation and has admitted he discussed the decision with Defendant Moore. We believe this comports with due process and will affirm.

**V.**

For the foregoing reasons, we will affirm the District Court's March 21, 2016 order entering summary judgment for Defendants.