**PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT
_____

No. 17-1434
_____

ANTHONY MIGLIARO,
                                        Appellant

v.

FIDELITY NATIONAL INDEMNITY
INSURANCE COMPANY,
a/k/a Wright National Flood Insurance Company

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 1-15-cv-05688)
District Judge: Honorable Robert B. Kugler

_____

Argued November 15, 2017

(Opinion Filed: January 29, 2018)

Before:  AMBRO, KRAUSE and RENDELL, Circuit Judges

Steven C. Feinstein          **(Argued)**
Daniel W. Ballard
Zenstein Ballard
1240 Old York Road
Suite 101
Warminster, PA   18974

    Counsel for Appellant

Francis X. Manning          **(Argued)**
Stradley Ronon Stevens & Young
457 Haddonfield Road
LibertyView, Suite 100
Cherry Hill, NJ   08002

Adam J. Petitt
Brandon M. Riley
Stradley Ronon Stevens & Young
2005 Market Street
Suite 2600
Philadelphia, PA   19103

    Counsel for Appellee

_____

O P I N I O N
_____

**RENDELL**, Circuit Judge:

The issue in this case is whether the rejection of a policyholder's proof of loss constituted a "written denial of all or part of the claim," thereby triggering the one-year statute of limitations that is set forth in every Standard Flood Insurance Policy ("SFIP"). After receiving a payment from Fidelity National Indemnity Insurance Company, based on an adjuster's assessment of the damage to his property caused by Hurricane Sandy, Anthony Migliaro submitted a sworn proof of loss seeking additional compensation. Fidelity sent Migliaro a letter rejecting his proof of loss, and he filed suit. The District Court found that the letter rejecting Migliaro's proof of loss was a "written denial of all or part of the claim." Since Migliaro filed his complaint almost two years after he received the letter, the District Court dismissed the suit as time-barred. We affirm the District Court's order. Although the rejection of a proof of loss is not *per se* a denial of the claim in whole or in part, it does constitute a denial of the claim if, as here, the policyholder treats it as such by filing suit against the carrier.

## I. Background[1]

### A. The National Flood Insurance Program

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

Congress authorized the creation of the National Flood Insurance Program ("NFIP") to "enable interested persons to purchase insurance against loss resulting from physical damage to or loss of . . . property . . . arising from any flood occurring in the United States." 42 U.S.C. § 4011(a). The NFIP is administered by the Federal Emergency Management Agency ("FEMA"). *Id.* Under FEMA's Write Your Own program, individuals may purchase SFIPs from private insurance carriers ("WYO carriers"). 44 C.F.R. § 62.23.

The national flood insurance system is an unusual hybrid of government and private insurance, but it is essentially a government program. WYO carriers are "fiscal agents" of the United States. 42 U.S.C. § 4071(a)(1). SFIP policyholders pay premiums to WYO carriers and WYO carriers service the policies. 44 C.F.R. § 62.23(d). However, the United States government ultimately pays all SFIP claims. *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 166 (3d Cir. 1998) ("[A]n insured's flood insurance claims are ultimately paid by FEMA.").[2] In addition, although WYO

---

[2] More specifically, "WYO companies must . . . remit the insurance premiums to [FEMA]; however, the companies may keep funds required to meet current expenditures, which are limited to five thousand dollars. *See* 44 C.F.R. pt. 62, app. A., art. VII(B) (2016). When WYO companies deplete their net premium income, a phenomenon that occurs regularly because the companies must forfeit a significant portion of the proceeds from premiums, they draw money from FEMA through letters of credit to disburse claims. *See* 44 C.F.R. pt. 62, app. A, art. IV(A). Thus, regardless whether FEMA or a WYO company issues a flood insurance policy, the United

4

carriers are also responsible for defending lawsuits arising under SFIPs, the United States government reimburses the cost of defending such claims. 44 C.F.R. §62.23(i)(6); *Van Holt*, 163 F.3d at 165 ("Although WYO companies have the responsibility of defending against claims, FEMA reimburses the WYO companies for their defense costs."). Because SFIP claims are ultimately paid by the United States government, all SFIPs must be identical to the form codified at 44 C.F.R. pt. 61, app. A(1).[3] Every SFIP contains the following statute-of-limitations provision:

> You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year *after the date of the written denial of all or part of the claim*[.] . . . This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

States treasury funds pay off the insureds' claims." *Van Holt*, 163 F.3d at 165.

[3] Although an SFIP may be modified with the "express written consent of the Federal Insurance Administrator," 44 C.F.R. pt. 61, app. A(1), art. VII(D), Migliaro's SFIP was not modified.

5

44 C.F.R. pt. 61, app. A(1), art VII(R) (emphasis added).

The SFIP and corresponding FEMA bulletins describe the SFIP claims process. After an SFIP policyholder suffers a loss, the WYO carrier sends an insurance adjuster to assess the damages. FEMA Bulletin W-12092a (Nov. 9, 2012). The adjuster then makes a recommendation as to the amount of money the policyholder is entitled to recover under the policy. *Id.* The WYO carrier typically adopts the adjuster's recommendation and pays the policyholder the recommended amount. *Id.* If the policyholder's coverage limits have not been exhausted and he believes he is entitled to recover more, he must send the carrier a proof of loss no later than a year and a half from the date of the loss. FEMA Bulletin W-13060a (Oct. 1, 2013).[4] A proof of loss is the policyholder's signed and sworn estimate of the additional covered damages. 44 C.F.R. pt. 61, app. A(1), art. VII(J)(4). The SFIP's Loss Payment provision sets forth the options available to the policyholder if the proof of loss is rejected. *See* 44 C.F.R. pt. 61, app. A(1), art. VII(M)(2).

---

[4] The claims process described in these FEMA bulletins differs slightly from the process described in the codified SFIP. While submission of a proof of loss within sixty days is typically a condition precedent to payment, *see* 44 C.F.R., pt. 61, app. (a)(1), art. IX(J)(7), in the aftermath of Hurricane Sandy, FEMA temporarily modified the scheme in order to expedite the claims process and to give policyholders more time to submit an initial proof of loss. FEMA Bulletin W-12092a (Nov. 9, 2012). Migliaro's claim was governed by this modified scheme.

## B. Factual Background

Migliaro purchased an SFIP from WYO carrier Fidelity for his New Jersey property. The property sustained flood damage in October 2012 as a result of Hurricane Sandy. Fidelity sent an independent adjuster to assess the damage. The adjuster recommended a payment of $90,499.11. Fidelity adopted the adjuster's recommendation and sent Migliaro a check for the recommended amount.[5]

Five months later, Migliaro submitted a proof of loss, claiming an additional $236,702.57 in damages. On July 15, 2013, Fidelity sent Migliaro a letter titled "Rejection of Proof of Loss." A189. The letter read, in pertinent part:

> The Proof of Loss cannot be accepted under the terms and conditions of the insurance policy for the following reason:
>
> 1. The amount claimed is not an accurate reflection of covered damage.

---

[5] Before the adjuster inspected the property, Migliaro had requested and received $35,000 in advance payments to cover the damage. The adjuster then inspected the property and submitted a report recommending a total payment of $90,449.11. Fidelity then paid Migliaro $55,449.11, the difference between the total covered damages and the $35,000 advanced to Migliaro.

> This is not a denial of your claim. Your field adjuster provided you with an estimate and Proof of Loss regarding covered damages. If there are additional covered damages identified, please forward documentation and they will be considered on a supplemental basis and a new corrected estimate and a new Proof of Loss will be provided.

A189. Migliaro did not provide additional documentation or otherwise attempt to submit a second proof of loss. Instead, he brought suit against Fidelity in federal court.

## C. Procedural Background

Migliaro initially filed suit in the District Court for the District of New Jersey on December 13, 2013, "to recover damages arising from Defendants' unfair refusal to pay insurance benefits as represented by . . . the subject insurance policy Defendants sold to Plaintiff." A208. In September 2014, Migliaro filed a motion for voluntary dismissal under Fed. R. Civ. P. 41(a)(2). The District Court granted the motion and dismissed Migliaro's first complaint without prejudice. Migliaro filed a second complaint against Fidelity in the same court on July 22, 2015, alleging that Fidelity "ha[d] failed and refused to pay to Plaintiff those benefits due and owing under [the SFIP]." A4.

Fidelity moved for summary judgment, arguing that the suit was barred by the SFIP's one-year statute of

8

limitations. Fidelity urged that the July 15, 2013 letter rejecting Migliaro's proof of loss was a "written denial of all or part of the claim," which triggered the statute of limitations. Since Migliaro's second complaint was filed almost two years after he received the letter, Fidelity argues that his claim was time-barred. In response, Migliaro argued that the letter rejecting his proof of loss was not a "written denial of all or part of the claim" because it explicitly said it was not a denial of his claim. According to Migliaro, he had never received a written denial of his claim, so the statute of limitations had never begun to run. The District Court granted summary judgment in favor of Fidelity. This timely appeal followed.

## II. Analysis[6]

The issue here is whether Fidelity's rejection of Migliaro's proof of loss constituted a "written denial of all or part of the claim," thereby triggering the SFIP's one-year statute of limitations. As the District Court correctly noted, "The Third Circuit has not explicitly defined what qualifies as

---

[6] We exercise plenary review over a grant of summary judgment and apply the same standard the district court applies. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We may affirm the decision of the District Court on any basis supported by the record. *Helvering v. Gowran*, 302 U.S. 238, 245 (1937).

a written denial of a claim seeking benefits under the SFIP." *Migliaro v. Fidelity Nat'l Indem. Ins. Co.*, Civ. No. 15-5688, 2017 WL 462631, at *2 (D.N. J. Feb. 3, 2017). Nor does it appear that any other federal court has done so.[7] Given the language of the SFIP's Loss Payment provision and the restrictions placed on a policyholder's private right of action against a WYO carrier, we conclude that the written rejection of a proof of loss constitutes a denial of the claim if, based on it, the policyholder files suit against the WYO carrier, thereby accepting the written rejection of a proof of loss as a written denial of the claim.

---

[7] Both parties cite a number of cases in which courts have considered, on a case-by-case basis, whether a particular writing constituted a written denial of a claim. *See, e.g., State Bank of Coloma v. Nat'l Flood Ins. Program*, 851 F.2d 817, 819 (6th Cir. 1988) (finding that a letter offering to pay 50% of the claimed damages was a partial denial of the claim and triggered the statute of limitations); *St. Germain Place Owners Ass'n Inc. v. Texas Farmers Ins. Co.*, Civ. A. No. G-11-071, 2012 WL 2564441 (S.D. Tex. June 29, 2010) (finding that a letter offering to pay some of the claimed damages was a partial denial of the claim); *House v. Bankers Ins. Co.*, 43 F. Supp. 2d 1329 (M.D. Fla. 1999) (finding that a letter from a WYO carrier was not a denial of the claim). However, we are not aware of any case providing a generally applicable definition of "written denial of all or part of the claim." Nor are we aware of any case in which the court has categorically determined whether the rejection of a proof of loss constitutes a "written denial of all or part of the claim."

10

At the outset, we reject Fidelity's argument that the rejection of a proof of loss is *per se* a denial of the claim. Fidelity's argument hinges on the SFIP's Loss Payment provision, 44 C.F.R. pt. 61, app. A(1), art. VII(M)(2), which reads in pertinent part:

> 2. If we reject your proof of loss in whole or in part you may:
> > a. Accept our denial of your claim
> > b. Exercise your rights under this policy; or
> > c. File an amended proof of loss as long as it is filed within 60 days of the date of the loss.

*Id.* Fidelity reasons that, since subsection (a) equates a rejection of a proof of loss with a denial of the claim, a rejection of a proof of loss is *per se* a denial of the claim.

But Fidelity misreads the Loss Payment provision. Under it, (a) is just one of three options a policyholder has after his proof of loss has been rejected. He need not accept the rejection as a denial of his claim. Alternatively, under option (b) he may exercise his rights under the SFIP. These include the right to demand an appraisal of the loss (44 C.F.R. pt. 61, app. A(1), art. VII(P)), the right to cancel the policy (44 C.F.R. pt. 61, app. A(1), art. VII(E)), and the right to file suit "within one year after the date of the written denial of all or part of the claim" (44 C.F.R. pt. 61, app. A(1), art. VII(R)). Finally, option (c) allows the policyholder to file an amended proof of loss and attempt to show the WYO carrier that he is indeed entitled to additional compensation.

Migliaro urged that he exercised his rights under option (b) by bringing suit against Fidelity (*See* Tr. Oral Arg. at 11:35-11:50), and therefore since the provision is in the

11

disjunctive, he did not choose option (a) and accept the rejection as a denial of his claim. But, in so arguing, Migliaro necessarily admits that he viewed the July 15, 2013 letter rejecting his proof of loss as a written denial of his claim. This is because the private right of action against a WYO carrier is limited to a suit challenging the complete or partial denial of his claim. Therefore, the very act of bringing suit signaled that, to Migliaro's mind, his claim had been denied. Second, by statute the policyholder's cause of action arises "upon the disallowance . . . of any [SFIP] claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim." 42 U.S.C. § 4072. The only communication of the disallowance was the written rejection of the proof of loss in the July 15 letter. Thus, by filing suit, Migliaro himself held out the July 15 letter rejecting his proof of loss as a denial of his claim. He cannot now argue otherwise.

When Congress created the NFIP, its authorization of policyholders to sue FEMA upon disallowance of their claims constituted a limited waiver of the sovereign immunity typically enjoyed by the federal agency. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). We must interpret this waiver of sovereign immunity—and the cause of action authorized under it—narrowly. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) (a waiver of sovereign immunity must be "strictly construed, in terms of its scope, in favor of the sovereign"). We cannot "enlarge the waiver beyond what the language requires." *Library of Congress v. Shaw*, 478 U.S. 310, 381 (1986) (internal quotation marks omitted). Strictly construed, 42 U.S.C. § 4072 provides a limited right to sue upon the disallowance of all or part of a claim, i.e. the complete or partial denial of a claim.

12

An SFIP policyholder is limited to bringing a suit against the WYO carrier if he desires to challenge the denial of his claim. Under the WYO program, WYO carriers stand in FEMA's shoes for litigation purposes. When Congress authorized a private right of action to challenge the denial of a claim in 42 U.S.C. § 4072, it only referred to suits against FEMA. But Congress also charged FEMA with implementing the NFIP, and it authorized the agency to promulgate regulations and to utilize private insurance companies as fiscal agents of the United States in order to do so. 42 U.S.C. §§ 4011, 4019, 4041, 4071. Pursuant to this authority, FEMA created the WYO program. 44 C.F.R. § 62.23. In so doing, it authorized WYO carriers to stand in FEMA's shoes for purposes of issuing and servicing SFIPs and, importantly, for defending lawsuits arising under SFIPs. *See* 44 C.F.R. § 61.13(f) ("Policies issued by WYO Companies may be executed by the issuing WYO Company as Insurer, in the place and stead of [FEMA]."); 44 C.F.R. § 62.23(g) ("WYO Companies are solely responsible for their obligations to their insured under any flood insurance policies[,] . . . such that the Federal Government is not a proper party defendant in any lawsuit arising out of such policies"). Because a suit against a WYO company is the "functional equivalent of a suit against FEMA," *Van Holt*, 163 F.3d at 166, an SFIP policyholder may only bring a suit against the WYO carrier.

Moreover, the United States government bears ultimate financial responsibility for all SFIP claims, regardless of whether FEMA or a WYO carrier has issued the policy. We must carefully "observe the conditions defined by Congress for charging the public treasury," *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947), and "when dealing with a statute subjecting the Government to liability

13

for potentially great sums of money, [we] must not promote profligacy by careless construction[,]" *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955). Therefore, restrictions on a policyholder's right of action against FEMA apply with equal force to suits against WYO carriers. *See Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 394 (9th Cir. 2000) ("Because flood losses, whether insured by FEMA or by a participating WYO insurer, are paid out of the [United States Treasury], a claimant under a standard flood insurance policy must comply strictly with the terms and conditions that Congress has established for payment."); *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 809 (3d Cir. 2005) ("Because any claim paid by a WYO Company is a direct charge to the United States Treasury, strict adherence to the conditions precedent to payment is required.").

Because the only suit a policyholder can bring against a WYO carrier is one challenging the denial of his claim, by bringing suit on December 13, 2013, Migliaro necessarily acknowledged that Fidelity had denied his claim. To the extent that Migliaro's suit was based upon something other than the denial of his claim, it would have also been properly dismissed for lack of jurisdiction because there is no waiver of sovereign immunity except for the causes of action provided for in the statute.[8] *See United States v. Dalm*, 494

---

[8] For example, Migliaro has suggested that his suit was based upon a wrongful denial of his proof of loss, common law breach of contract, or a breach of the covenant of bad faith. *See* Tr. Oral Arg. at 40:56-41:11 (characterizing the cause of action as the "failure to honor proof of loss as it was submitted"); Oral Argument at 5:55-7:12; 38:25-39:15

14

U.S. 596, 608 (1990) ("[T]he United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (internal quotation marks omitted).

A policyholder must also wait until his claim has been denied before he can file suit against a WYO carrier. According to the SFIP, "If you do sue, you must start the suit within one year *after the date of the written denial of all or part of the claim*[.]" 44 C.F.R. pt. 61, app. A(1), art. VII(R) (emphasis added). For the same reasons that we must narrowly construe the *type* of suit a policyholder may bring against a WYO carrier, we must also narrowly construe *when* a policyholder may bring suit. *See Block v. North Dakota*, 461 U.S. 273, 287 (1983) ("When Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied."). Narrowly interpreted, this clause provides that a policyholder may not bring suit against a WYO carrier until after his claim has been denied in writing.

Because a policyholder cannot bring suit until his claim has been denied in writing, Migliaro must have accepted that this had occurred when he brought suit. The

("We're basing [the suit] upon a breach of contract. We're not basing it upon a denial of a claim."); Br. for Appellant 25-27 (arguing that his claim should be allowed to proceed based on a theory of bad faith and unfair dealing). As noted, however, there is no waiver of sovereign immunity in connection with these common law claims.

only writing in the record that Migliaro could have construed as a denial of his claim was the July 15, 2013 letter rejecting his proof of loss. Thus, by bringing suit, Migliaro acknowledged that the letter constituted a written denial of his claim.

Migliaro's pleadings bear out this characterization of his suit as one challenging the denial of his claim. His complaint alleged that, "despite demand for benefits under its policy of insurance, [Fidelity] failed and refused to pay benefits due and owing under said policy[.]" A4. Surely this is the same as saying that his claim was denied in whole or in part.

Finally, we note Migliaro's contention that, even if a rejected proof of loss could constitute a denial of the claim, his particular rejection letter did not because it stated that it was "not a denial of [the] claim." A189. We do not agree. Given the language of the Loss Payment provision, the statement was technically true at the time it was made. At that time, the door to additional compensation for his claim remained open. In the July 15 letter, Fidelity actually invited him to submit additional documentation to support his initial proof of loss. Also, by law he had the right to seek an appraisal of the loss or file an amended proof of loss within sixty days. 44 C.F.R. pt. 61, app. A(1), art. VII(M)(2). But Migliaro closed the door by failing to seek an appraisal, file an amended proof of loss within sixty days, or submit additional documentation. Instead, he sued, and in doing so acknowledged that, by virtue of the letter rejecting his proof of loss, his claim had been denied.

Migliaro takes the position that because the rejection letter stated that it was not a denial, the statute of limitations never commenced to run. He effectively claims an open-

16

ended right to file suit. But his position is undercut by his own conduct—he brought suit because his claim was denied. Thus, because Migliaro's second complaint was filed almost two years after he received the July 15, 2013 letter, his suit was properly dismissed as time-barred.[9]

## III. Conclusion

For the foregoing reasons, we affirm the District Court's order granting summary judgment.

---

[9] It is of no moment that Migliaro's first complaint was timely and was dismissed without prejudice. *Cardio-Med Assocs. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 77 (3d Cir. 1983) (it is a "well recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice. As regards the statute of limitations, the original complaint is treated as if it never existed").